UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ECS OPCO 1, LLC d/b/a SPECTRUM VASCULAR,<br><br>    Plaintiff,<br><br>v.<br><br>BOARD OF REGENTS, THE UNIVERSITY OF TEXAS SYSTEM on behalf of UNIVERSITY OF TEXAS M.D. ANDERSON CANCER CENTER,<br><br>    Defendant. | Civil Action No. 7:23-cv-10437 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1. This is an action for declaratory and injunctive relief, to preserve the status quo concerning a patent license. In 2014, Defendant granted an exclusive intellectual property license to Cook Incorporated and Cook Medical Technologies LLC (collectively "Cook Medical"). In July 2023, as permitted by the license, Cook Medical assigned the license to Plaintiff ECS Opco 1, LLC d/b/a Spectrum Vascular ("Spectrum Vascular"), which is based in White Plains, New York. Since that time, Defendant (acting through counsel located in New York City) has delivered correspondence to Spectrum Vascular in New York, asserting baseless breaches of the license, including asserting that the July 2023 assignment was "invalid and void." Defendant took the position that it "will consider the Agreement terminated on November 15, 2023," and has threatened to "begin marketing the Licensed Subject Matter immediately following such date." Defendant subsequently revised the date on which it would "consider the

Agreement terminated" to November 29, 2023, and has not withdrawn its threat to "begin marketing the Licensed Subject Matter immediately following such date." There is no basis in fact for Defendant's asserted breaches and its notice of purported termination, and Defendant has no right to "begin marketing the Licensed Subject Matter." Upon information and belief, Defendant is making these assertions and threats in an effort to gain leverage to re-negotiate the license terms. Spectrum Vascular brings this action for declaratory relief to confirm that the license has not been breached, to preserve its rights under the license, and to restrain Defendant from violating those rights.

## THE PARTIES

2. Plaintiff ECS Opco 1, LLC d/b/a Spectrum Vascular ("Spectrum Vascular") is a limited liability company organized under the laws of Delaware, with a principal place of business in White Plains, New York.

3. Defendant The Board of Regents, The University of Texas System, is a state board established for the purpose of governing The University of Texas System. Defendant maintains its principal office in Austin, Texas. Defendant operates the University of Texas M.D. Anderson Cancer Center in Houston. Defendant is referred to herein as UTMDACC.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332(a), 2201 and 2202.

5. This action is between citizens of different states, and the matter in controversy exceeds the value of $75,000.

6.     As described in detail below, an actual, immediate, substantial, and justiciable controversy exists between Spectrum Vascular and UTMDACC concerning the License Agreement.

7.     UTMDACC is subject to personal jurisdiction in this District pursuant to Fed. R. Civ. P. 4(k)(1)(A) and N.Y. C.P.L.R. 302(a).

8.     As alleged in detail below, through its agent in New York, UTMDACC breached its License Agreement with its duly authorized New York-based Licensee, Plaintiff Spectrum Vascular.  UTMDACC also tortiously interfered with the contractual rights of Spectrum Vascular with Cook Medical.  Specifically, UTMDACC caused its counsel in New York City to send correspondence to Spectrum Vascular at its offices in White Plains, New York, which interfered with the contractual relationship between Cook Medical and Spectrum Vascular, thereby injuring persons or property located within New York.  Upon information and belief, UTMDACC intends also to interfere with Spectrum Vascular's relationships with its customers including those in New York.

9.     Further, UTMDACC transacts business in New York at least as follows: (1) UTMDACC transacts business in New York through its License Agreement with its duly authorized New York based Licensee, Spectrum Vascular; (2) UTMDACC markets and promotes itself and its services in New York, for example through full-page advertisements placed in *The New York Times,* and upon information and belief through television advertising broadcast in New York; (3) upon information and belief, UTMDACC transacts business in New York through license and other agreements with entities located in New York, and derives substantial revenue from such agreements; (4) upon information and belief, UTMDACC derives

3

substantial licensing revenue from goods used or consumed or services rendered in New York; and (5) UTMDACC conducts business in New York through agents located in New York.

10. This Court has personal jurisdiction over UMDACC for at least the reasons set forth above, and upon information and belief, discovery would reveal additional support if such personal jurisdiction were to be challenged.

11. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District.

12. The License Agreement does not specify a forum for resolution of disputes between the parties, or limit where an assignee of the License Agreement can be located.

## STATEMENT OF FACTS

13. On December 11, 2014, UTMDACC and Cook Medical entered into a License Agreement ("License Agreement"). Under the terms of that License Agreement, UTMDACC granted Cook Medical an exclusive license to Licensed Subject Matter, as that term is defined in the Agreement. The Licensed Subject Matter comprises certain patents and "Technology Rights" developed at M.D. Anderson Cancer Center and owned by UTMDACC.

14. The Licensed Subject Matter licensed by UTMDACC to Cook Medical relates to vascular catheters having antibiotic coatings.

15. After entering into the License Agreement, Cook Medical and affiliate entities operated a business developing, making and selling catheters utilizing the Licensed Subject Matter.

16. Under Section 11.1 of the License Agreement, Cook Medical had the right to assign the License Agreement, without the prior consent of UTMDACC, to an acquiring entity in connection with a merger or sale of substantially all of the assets of Cook Medical's business or product line to which the License Agreement relates.

17. On July 11, 2023, pursuant to an Asset Purchase Agreement and related agreements, Cook Medical and affiliated entities sold to Spectrum Vascular all of the assets of Cook Medical's business and product line to which the License Agreement relates.

18. On that same date, Cook Medical and Spectrum Vascular entered into an Assignment & Assumption Agreement, whereby Cook Medical assigned the License Agreement to Spectrum Vascular. In turn, Spectrum Vascular assumed all of Cook Medical's interests, rights, duties, and obligations under the License Agreement and agreed to comply with all terms and conditions thereof.

19. On July 20, 2023, Cook Medical confirmed in writing to UTMDACC that it had sold to Spectrum Vascular substantially all of the assets of Cook Medical's business and product line to which the License Agreement relates, and accordingly had assigned the License Agreement to Spectrum Vascular. Cook Medical also provided UTMDACC with a copy of the July 11, 2023 Assignment & Assumption Agreement between Cook Medical and Spectrum Vascular.

20. On August 15, 2023, counsel for UTMDACC located in New York sent a letter to Cook Medical and Spectrum Vascular in which UTMDACC stated as follows:

> Notice is hereby given that the purported assignment of the Agreement described in the Assignment Agreement, Cook Notice and Spectrum Letter is invalid and void. Pursuant to Section 1.1 of the Agreement, Licensee is prohibited from assigning the Agreement without the consent of UTMDACC, and UTMDACC has not consented to the assignment of the Agreement described in the Assignment Agreement. Further, to the knowledge of UTMDACC, Assignee is not an Affiliate, successor or acquiring entity of substantially all of the assets of Licensee's business or product line to which the Agreement relates. The Agreement is hereby terminated pursuant to Section 12.6 of the Agreement, unless UTMDACC receives written notice from Licensee and Assignee confirming that the purported assignment set forth in the

>   Assignment Agreement is revoked and terminated within ninety (90) calendar days from the date of this Notice.

21. In its August 15 letter, UTMDACC also gave notice of other purported defaults concerning required spending and reporting under the License Agreement.

22. On September 30, 2023, Cook Medical responded to UTMDACC's August 15 letter. In its letter, Cook Medical explained that the July 11, 2023 assignment from Cook Medical to Spectrum Vascular was valid and effective, and that Spectrum is the current licensee under the License Agreement:

>   Your letter asserts that Cook's assignment of the License Agreement to Spectrum Vascular pursuant to the Assignment of License Agreement, dated July 11, 2023 (the "Assignment"), is invalid and void because Cook failed to obtain UTMDACC's consent to the Assignment. As you know, Section 11.1 of the License Agreement expressly permits Cook to assign the License Agreement without UTMDACC's consent to an acquiring entity in connection with a merger or sale of substantially all of the assets of Cook's business or product line to which the License Agreement relates. The Assignment was part of a transaction in which Cook sold to Spectrum Vascular, among other things, all of its right, title and interest in the Licensed Products and the product line to which the License Agreement relates. As such, the assignment of the License Agreement is expressly contemplated by the language of Section 11.1 of the License Agreement and does not constitute a breach of the License Agreement. Your client was advised of these facts in advance of the closing of the transaction and neither raised an objection to the assignment, nor indicated its belief that its consent was required for the assignment at that time because the License Agreement expressly permits assignment by Cook without consent from UTMDACC in these circumstances, the assignment accomplished by the Assignment did not constitute a breach of the License Agreement, the Assignment is valid and effective and Spectrum Vascular is the current licensee under the License Agreement.

23. In its September 30 letter, Cook Medical also addressed and resolved the other purported defaults raised in UTMDACC's August 15 letter.

6

24. On November 1, 2023, counsel for UTMDACC located in New York sent a letter to Cook Medical and Spectrum Vascular in which UTMDACC persisted with its unfounded position that the assignment from Cook Medical to Spectrum Vascular was "invalid and void":

> Notice is hereby given that the purported assignment of the Agreement described in the Assignment Agreement and the Spectrum Letter remains invalid and void for the reasons set forth in the Prior Notice.

25. In its November 1 letter, UTMDACC also took the position that it would consider the License Agreement terminated as of November 15, 2023, and threatened that it would "begin marketing the Licensed Subject Matter immediately following such date":

> Unless UTMDACC receives reasonably satisfactory evidence of Licensee's compliance with the terms of the Agreement with respect to the transactions contemplated by the Assignment Agreement, UTMDACC will consider the Agreement terminated on November 15, 2023. In addition, UTMDACC will begin marketing the Licensed Subject Matter immediately following such date.

26. In its November 1 letter, UTMDACC did not address any of the other purported defaults identified in its August 15 letter, thereby indicating that those purported defaults had been resolved.

27. UTMDACC did raise another purported default in its November 1 letter, concerning payment of out-of-pocket expenses for maintenance of patent rights.

28. Cook Medical responded to UTMDACC's letter on November 7, 2023, rebutting UTMDACC's assertions concerning the assignment and explaining that UTMDACC was engaged in a bad faith attempt to renegotiate the terms of the License Agreement:

> UTMDACC's pretextual claims of breach in your letters are clearly part of a larger effort by your client to unilaterally renegotiate the terms of the Agreement . . . . [A]fter acknowledging in the conversations and negotiations with Cook regarding the acknowledgement, which specifically stated that the purchase agreement between Cook and Spectrum accomplished the sale of the business of Cook to which the Agreement relates, that the planned

7

> assignment to Spectrum complied with Section 11.1 of the Agreement, UTMDACC attempted to coerce Cook and Spectrum into accepting amendments to the Agreement that had not been previously discussed among the parties. The claims your client now makes are further attempts to do the same, and UTMDACC's transparent efforts to force an amendment of the Agreement in bad faith will be obvious should this dispute proceed to litigation.
>
> The Agreement in no way requires Cook to provide evidence—reasonably satisfactory or otherwise—proving to UTMDACC that the transaction pursuant to which the Agreement was assigned represented a sale of substantially all assets of Cook's business or product line to which the Agreement relates, either at the time of such transaction or upon demand from UTMDACC. Your client has not provided any information that would provide a basis to claim that the assignment of the Agreement by Cook to Spectrum did not comply with Section 11.1 of the Agreement. Moreover, given UTMDACC's conduct to date in connection with the assignment, it is clear that UTMDACC's request for "reasonably satisfactory evidence" was made in bad faith for purposes of interfering with Cook's transaction with Spectrum and attempting to rewrite the terms of the Agreement. Cook is under no obligation to share confidential details of its transaction with Spectrum, and accordingly declines UTMDACC's request.

29. In its November 7 letter, Cook Medical also addressed the purported default raised for the first time in UTMDACC's November 1 letter, concerning payment of out-of-pocket expenses for maintenance of patent rights.

30. Spectrum Vascular also sent a letter to Cook Medical on November 7, explaining that the Assignment & Assumption Agreement effected a valid assignment of the Spectrum License Agreement and that there was no basis for UTMDACC's purported notice of termination of the License Agreement. In its letter, Spectrum Vascular also explained as follows:

> As the owner of this product line and business (including the 510(k) associated with the second-generation Spectrum technology), Spectrum Vascular is making substantial investments in the Licensed Subject Matter, and is working hard to bring the second-generation Spectrum technology to market . . . . Spectrum Vascular hopes to have a constructive and mutually rewarding relationship with MDACC.

31. Spectrum Vascular further explained that UTMDACC's actions threaten Spectrum Vascular's investments in the Licensed Subject Matter and its business, and that unless UTMDACC retracted its purported notice of termination and its threat to "begin marketing the Licensed Subject Matter," Spectrum Vascular would have no choice but to initiate legal proceedings.

32. In view of the needless urgency created by UTMDACC's delay until November 1 and its threat to "begin marketing the Licensed Subject Matter" on November 16, Spectrum Vascular requested that UTMDACC confirm by the close of business on November 10, 2023 that it has withdrawn its purported notice of termination of the Spectrum License Agreement. Spectrum Vascular wrote that "[i]f MDACC does not respond by that time, Spectrum Vascular will understand that MDACC is refusing to withdraw the notice of termination and its threat to 'begin marketing the Licensed Subject Matter.'"

33. UTMDACC subsequently revised the date on which it would "consider the Agreement terminated" to November 29, 2023, and refused to withdraw its threat to "begin marketing the Licensed Subject Matter immediately following" November 29, 2023. Upon information and belief, UTMDACC has given notice of purported termination, and has threatened to "begin marketing the Licensed Subject Matter," in a bad faith effort to gain leverage to re-negotiate the terms of the License Agreement.

34. The assignment of the License Agreement from Cook Medical to Spectrum Vascular was valid and effective since (a) it was in connection with a merger or sale of substantially all of the assets of Cook Medical's business or product line to which the License Agreement relates, and (b) Spectrum Vascular assumed all of Cook Medical's interests, rights,

duties, and obligations under the License Agreement and agreed to comply with all terms and conditions thereof.

35. UTMDACC's assertion that the assignment was "invalid and void," its notice of purported termination of the License Agreement as of November 29, 2023, and its threat to "begin marketing the Licensed Subject Matter immediately following such date" are all without basis and constitute breaches of the License Agreement by UTMDACC.

36. The Assignment & Assumption Agreement between Cook Medical and Spectrum Vascular is a valid and existing contract. UTMDACC has had knowledge of that contract since at least July 20, 2023 when Cook Medical provided a copy thereof to UTMDACC. UTMDACC has willfully and intentionally interfered with the Assignment & Assumption Agreement without justification by asserting that the Assignment & Assumption Agreement is "invalid and void" and that the License Agreement would be terminated as of November 29, 2023. UTMDACC's actions have proximately caused harm to Spectrum Vascular.

## STATEMENT OF CLAIMS

### COUNT I
### Breach of Contract

37. Spectrum Vascular incorporates by reference each of the preceding paragraphs 1-36 as if fully set forth herein.

38. As set forth above, UTMDACC's assertion that the assignment was "invalid and void," its notice of purported termination of the License Agreement as of November 19, 2023, and its threat to "begin marketing the Licensed Subject Matter immediately following such date" are all without basis and constitute breaches of its License Agreement with Spectrum Vascular by UTMDACC.

10

## COUNT II
## Tortious Interference with Contract

39. Spectrum Vascular incorporates by reference each of the preceding paragraphs 1-36 as if fully set forth herein.

40. As set forth above, the Assignment & Assumption Agreement between Cook Medical and Spectrum Vascular is a valid and existing contract. UTMDACC has had knowledge of that contract since at least July 20, 2023 when Cook Medical provided a copy thereof to UTMDACC. UTMDACC has willfully and intentionally interfered with the Assignment & Assumption Agreement without justification by asserting that the Assignment & Assumption Agreement is "invalid and void" and that the License Agreement would be terminated as of November 29, 2023. Upon information and belief, UTMDACC also intends to interfere Spectrum Vascular's relationships with its customers including those in New York. UTMDACC's actions have proximately caused harm to Spectrum Vascular in New York.

## COUNT III
## Declaration of Contract Rights

41. Spectrum Vascular incorporates by reference each of the preceding paragraphs 1-36 as if fully set forth herein.

42. An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, has arisen and exists between Spectrum Vascular and UTMDACC regarding the License Agreement.

43. As set forth above, the Assignment & Assumption Agreement between Cook Medical to Spectrum Vascular was valid and effective since (a) it was in connection with a merger or sale of substantially all of the assets of Cook Medical's business or product line to which the License Agreement relates, and (b) Spectrum Vascular assumed all of Cook Medical's

11

interests, rights, duties, and obligations under the License Agreement and agreed to comply with all terms and conditions thereof.

44. Further as set forth above, UTMDACC's assertion that the assignment was "invalid and void," its purported notice of termination of the License Agreement as of November 29, 2023, and its threat to "begin marketing the Licensed Subject Matter immediately following such date" are all without basis.

45. Accordingly, Spectrum Vascular is entitled to a declaration, and any necessary injunctive relief, confirming that the Assignment & Assumption Agreement is valid and effective, and that Spectrum Vascular is the sole and exclusive licensee of the Licensed Subject Matter under the License Agreement.

**PRAYER FOR RELIEF**

WHEREFORE, Spectrum Vascular respectfully requests that the Court enter judgment in its favor and against UTMDACC, and to provide further relief as follows:

A. A declaratory judgment that the Assignment & Assumption Agreement is valid and effective, and that Spectrum Vascular is the sole and exclusive licensee of the Licensed Subject Matter under the License Agreement;

B. A preliminary and permanent injunction preventing UTMDACC from marketing the Licensed Subject Matter to third parties and/or making any further efforts to license or other transfer any rights to the Licensed Subject Matter to any third party;

C. An award to Spectrum Vascular of its fees and costs incurred in connection with this suit; and

D. Any such other relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Spectrum Vascular demand a trial by jury as to all claims so triable.

Dated: November 29, 2023

By: /s/ *Michael A. Cabin*
Michael A. Cabin
**DUANE MORRIS LLP**
230 Park Avenue, Suite 1130
New York, NY 10169-0079
212.404.8743
MACabin@duanemorris.com

Anthony J. Fitzpatrick
(*pro hac vice* to be filed)
McKenna Heath
(*pro hac vice* to be filed)
**DUANE MORRIS LLP**
100 High Street
Suite 2400
Boston, MA 02110
857.488.4200
ajfitzpatrick@duanemorris.com
mheath@duanemorris.com

*Attorneys for Plaintiff ECS Opco 1, LLC d/b/a Spectrum Vascular*

DM2\18884869.2